# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY No. 06-31296 |
| | Adv. No. 06-03386 |
| SHERWIN P. BROWN, | |
| Debtor. | |

| | |
|---|---|
| SHERWIN P. BROWN, | Civil No. 09-813 (JRT) |
| Appellant/Defendant, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRPUTCY COURT ORDER** |
| NAUNI JO MANTY, as Receiver for Brawta Ventures, LLC, | |
| Appellee/Plaintiff. | |

Matthew F. Forsgren and Julie H. Firestone, **BRIGGS & MORGAN, P.A.**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for appellant/defendant.

Nauni J. Manty and Jacqueline D. Kuiper, **MANTY & ASSOCIATES**, 510 First Avenue North, Suite 305, Minneapolis, MN 55403, for appellee/plaintiff.

This matter is before the Court on appellant Sherwin Brown's appeal from a final order of United States Bankruptcy Judge Gregory F. Kishel, entered on February 25, 2009. *See* 28 U.S.C. § 158(a)(1). For the reasons set forth below, the Court affirms the order of the bankruptcy court.

**BACKGROUND**

The instant appeal arises out of an adversary action in bankruptcy court brought by Nauni Manty, the receiver for investment fund Brawta Ventures, LLC ("Brawta"), against Sherwin Brown, who managed Brawta. (Brown App. at 1, Docket No. 4.) Manty brought the action to recover funds that Brown allegedly misappropriated from Brawta investors for his own personal use. (*Id.* at 2.) Manty sought an order "denying [Brown] a discharge as to Brawta in the bankruptcy proceeding to the extent of the misappropriated funds, and . . . sustaining [Manty's] objections to [Brown's] homestead exemption and personal property exemptions to the extent of the misappropriated funds." (Brown App. at 3.) The Court briefly describes a prior civil action against Brown and the bankruptcy proceedings, below.

**I.      SEC CIVIL ACTION AGAINST BROWN, JAMERICA, AND BRAWTA**

In February 2006, the Securities and Exchange Commission ("SEC") began investigating Jamerica Financial, Inc. ("Jamerica"). *SEC v. Brown*, 579 F. Supp. 2d 1228, 1232 (D. Minn. 2008). Jamerica provides investment advisory services and portfolio management services to investor-clients. *Id.* at 1230. Brown controls Jamerica and provides investment advisory services to Jamerica's clients. *Id.* In May 2004, Brown organized Brawta, a private investment firm. *Id.* Brown, who was Brawta's general managing partner, marketed Brawta shares directly to clients of Jamerica, initially charging $10,000 per share. *Id.* Brown alternately indicated to investors that

Brawta would operate as a mutual fund that invested in publicly traded stocks, or that Brawta would operate as a venture capital fund and invest in start-up companies. *Id.* at 1230-31. Between May 2004 and January 2006, investors invested approximately $1.62 million in Brawta. *Id.* at 1231. Brown was solely responsible for Brawta investments and Brown had sole authority over Brawta's bank account. *Id.* During that time period, Brown executed a series of transactions in which he withdrew funds from the Brawta account and deposited those funds into his personal account or into a Jamerica account. *Id.* at 1231-32.

On March 29, 2006, the SEC commenced an action against Brown, Jamerica, and Brawta in the United States District Court for the District of Minnesota. *Id.* at 1232. The SEC alleged violations of the Securities Act of 1933 (the "Securities Act"), *see* 15 U.S.C. § 77q(a)(1)-(3); the Securities Exchange Act of 1934 (the "Exchange Act"), *see* 15 U.S.C. § 78j(b); SEC Rule 10b-5 as promulgated under the Exchange Act, *see* 17 C.F.R. § 240.10b-5, and the Advisers Act, *see* 15 U.S.C. § 80b-4. *Brown*, 579 F. Supp. 2d at 1232. After the SEC filed the action, defendants provided an accounting of Brawta's financial activities. *See id.* The accounting indicated that Brown had invested $865,389.76 of Brawta's funds. *Id.* The accounting also revealed that Brawta had made "unallocated payments" totaling $877,236.16, including transfers of $145,400 to Brown's personal checking account, $521,483 to Jamerica accounts, and $210,353.16 to destinations that could not be identified. *Id.*

On April 30, 2007, the United States Attorney's Office advised Brown's counsel that a federal grand jury was investigating Brown. *Id.* at 1233. On July 25, 2007, Brown

appeared for his deposition related to the SEC's civil action and asserted his Fifth Amendment privilege. *Id.* Brown also refused to testify on behalf of Jamerica or Brawta. *Id.*

The SEC filed a motion for summary judgment against Brown and Jamerica. *Id.* In response, Brown submitted a set of interrogatory answers – which he supplied to the SEC in April 2007 – explaining that the Brawta transactions were legitimate. *Id.* at 1234-35. After a hearing on the motion, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation recommending that the Court grant the SEC's motion. *Id.* at 1230, 1233. The Magistrate Judge found, in particular, "that Brown submitted [the interrogatory] responses and then invoked the Fifth Amendment, thereby preventing the SEC from exploring his answers in a deposition. The Magistrate Judge concluded that it would therefore be 'fundamentally unfair' to allow Brown to rely on the[] responses in opposing summary judgment." *Id.* at 1234 (citation omitted).

On September 30, 2008, this Court adopted the Report and Recommendation and granted the SEC's motion. *Id.* at 1238. The Court declined to consider Brown's interrogatory answers in concluding that there was no genuine fact dispute, concluding that allowing Brown to rely on that evidence "would allow him to manipulate the discovery process so that his unquestioned, conclusory assertions are the only version of his testimony in the record." *Id.* at 1235. The Court made several factual findings regarding Brown's activities with Jamerica and Brawta:

> The evidence of defendants' recklessness was ably summarized by the Magistrate Judge. The unrefuted evidence demonstrates that Brown received more than $1.62 million for the purpose of investing in Brawta,

after Brown indicated to investors that this money would be used for investment purposes. The analysis submitted by the SEC indicates that $496,550 of these funds were transferred to Jamerica; $262,906 were transferred to Brown or used to pay his personal debts; and $110,177 were withdrawn by checks payable to U.S. Bank, with the SEC unable to determine exactly how they were expended. This assessment is consistent with the analysis filed by the defense, which concluded that Brawta had made "unallocated" payments totaling $877,236.16. In addition, the Magistrate Judge noted that Brown attempted to conceal many of these transfers by . . . converting funds to cash by writing checks directly to banks; . . . and . . . falsely characterizing contributions from Brawta to Jamerica as a capital contribution from Brown. The evidence also indicates that the accounts where these funds were deposited were later used for personal expenditures . . . . Moreover, Brown does not dispute that he overstated the value of Brawta's shares to its investors after those shares dropped significantly in value. Finally, and significantly, the Magistrate Judge noted that the defendants brought forward no evidence demonstrating that the transfers in question were for legitimate investment purposes.

*Id.* at 1236-67.

Based in part on those findings, the Court concluded that there was no dispute of fact that Brown violated federal securities laws by acting with "severe recklessness" in misappropriating Brawta funds. *Id.* at 1232, 1236-37. Accordingly, the Court granted the SEC's motion for summary judgment on the securities fraud claims and for violation of the Adviser's Act. *Id.* at 1237-39.

## II. BROWN'S BANKRUPTCY PROCEEDINGS

On June 16, 2006, while the SEC civil action was pending, Brown filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Minnesota. (*See* Bankr. No. 06-31296, Docket No. 1.) In schedules filed with the bankruptcy court, Brown exempted $151,107 in equity from his homestead pursuant to Minn. Stat. §§ 510.01 and 510.02. (Brown App. at 35, Docket No 4; *see also* Bankr.

No. 06-31296, Docket No. 1 at 11.)  Brown also claimed an exemption of $45,887 for his 401(k) retirement savings pursuant to Minn. Stat. § 550.37 subd. 24.  (Brown App. at 35, Docket No. 4; *see also* Bankr. No. 06-31296, Docket No. 1 at 11.)

On August 7, 2006, Manty, as receiver for Brawta, filed in the bankruptcy court an adversary complaint against Brown.  (Bankr. No. 06-3386, Compl., Docket No. 1.) Manty objected to Brown's claimed homestead and personal property exemptions and asked the bankruptcy court to impose a constructive trust on Brown's personal assets to the extent that they could be traced to Brawta investors' funds.  (*See id.* ¶¶ 26-36, 43-46.) Manty also objected to Brown's request to discharge debt owed to Brawta, asserting that Brown's fraudulent activities barred discharge of that debt.  (*See id.* ¶¶ 47-54.)

On January 7, 2009, Manty filed a motion for summary judgment.  (Brown App. at 31-42, Docket No. 4.)  Manty argued that Brown was collaterally estopped from re-litigating issues and contesting facts relating to his fraudulent conduct because this Court had adjudicated those issues in its order granting the SEC's motion for summary judgment in the civil action.  (*Id.* at 34-35.)  Manty argued that, in light of the preclusive effect of this Court's findings, her objections to Brown's homestead and personal property exemption should be sustained.  (*Id.* at 35-39.)  Manty also argued that Brown's debt to Brawta investors should not be discharged in the bankruptcy proceedings because Brown's fraudulent conduct and breach of fiduciary duty to investors created that debt. (*Id.* at 39-42.)

On February 25, 2009, the bankruptcy court granted Manty's motion.  (*See generally id.* at 128-163.)  The bankruptcy court concluded that Brown had had a full and

- 6 -

fair opportunity before this Court to litigate facts relating to the issue of fraud, and concluded that collateral estoppel precluded Brown's re-litigation of fraud in the bankruptcy proceedings. (*Id.* at 138-42.) The bankruptcy court found that this Court had made findings as to the fraudulent nature of Brown's conduct "and made a number of findings as to state of mind and ended up concluding essentially that [Brown's] use of [the Brawta investors'] funds was illegal. It was not authorized by law. It was in derogation of the rights of his clientele." (*Id.* at 142.) The bankruptcy court sustained Manty's objections to Brown's claimed homestead and personal property exemptions. The bankruptcy court determined that Brown would be unjustly enriched if the court permitted him to retain assets that were the product of fraud, and imposed a constructive trust on Brown's homestead and Brown's 401(k) account to the extent that those assets were attributable to Brown's misappropriation of Brawta funds. (*Id.* at 143-45.) Finally, the bankruptcy court concluded that, based on this Court's findings of misconduct and fraud in the SEC civil action, Brown's debt relating to Brawta investors should not be discharged. (*Id.* at 150-61.)

Brown timely appealed the bankruptcy court's final order granting Manty's motion for summary judgment. (Docket No. 1.) Brown challenges the bankruptcy court's conclusions regarding collateral estoppel, the inapplicability of the homestead exemption and personal property exemptions, the propriety of the constructive trust, and the non-dischargeability of the Brawta debt. (Appellant's Opening Br., Docket No. 3.) The Court addresses those arguments in turn.

## DISCUSSION

### I. STANDARD OF REVIEW

In bankruptcy proceedings, the district court sits as an appellate court and applies the same standard of review as the court of appeals. *Reynolds v. Pa. Higher Educ. Assistance Agency*, 425 F.3d 526, 531 (8th Cir. 2005). This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. Id.* "A finding is clearly erroneous when although there is evidence to support it[,] the reviewing court is left with the definite and firm conviction that a mistake has been committed." *DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006) (internal quotation marks and alteration omitted).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. COLLATERAL ESTOPPEL

A bankruptcy court may grant summary judgment

> where the material facts have been settled by a final order or judgment entered in an earlier proceeding, in the same or another forum, and the only

question remaining is the application of different substantive law to those established facts. This principle – "issue preclusion" or collateral estoppel – applies in dischargeability proceedings in bankruptcy.

*Minn. Trust Co. of Austin v. Yanke*, 225 B.R. 428, 432 (Bankr. D. Minn. 1998), *aff'd*, 230 B.R. 374 (B.A.P. 8th Cir. 1999); *see also Grogan v. Garner*, 498 U.S. 279, 284-85 & n.11 (1991). In bankruptcy proceedings in the Eighth Circuit, the doctrine of collateral estoppel applies if

> (1) the party sought to be precluded in the second suit [was] a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded [is] the same as the issue involved in the prior action; (3) the issue sought to be precluded [was] actually litigated in the prior action; (4) the issue sought to be precluded [was] determined by a valid and final judgment; and (5) the determination in the prior action [was] essential to the prior judgment.

*Sells v. Porter*, 539 F.3d 889, 894 (8th Cir. 2008) (internal quotation marks omitted). Brown challenges the bankruptcy court's conclusions as to only the third requirement.

The bankruptcy court concluded that Brown is collaterally estopped from re-litigating the issue of fraud relating to Brawta investors. (Brown App. at 140-41.) The bankruptcy court noted that this Court had previously found that Brown had "extracted hundreds of thousands of dollars of funds from the[] investment programs as to which he was the manager and the person entrusted by his clientele . . . He took a lot of money and put it to his own use." (*Id.* at 141.) Brown argues, however, that he did not have a full and fair opportunity to litigate the issue of fraud because he "was forced to preserve his Fifth Amendment privilege against self-incrimination. . . . [because of] the pendency of criminal investigation during the civil discovery process." (Appellant's Opening Br. at 16, Docket No. 3.)

"Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure to bring forward evidence in their defense." *Brown*, 579 F. Supp. 2d at 1234 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). At summary judgment in the SEC's civil case, Brown submitted interrogatory responses in an attempt to create a genuine issue of fact, despite having invoked his Fifth Amendment privilege during his deposition. *Id.* In the interests of fairness to the SEC in the discovery process, the Court declined to permit Brown to rely on his interrogatory responses at summary judgment. *Id.* at 1235. The Court then carefully considered the record and concluded that there was no genuine issue of fact that Brown had acted with "severe recklessness" in violation of federal securities fraud laws. *Id.* at 1236-37.

Brown's invocation of the Fifth Amendment in the SEC civil action does not preclude a determination that in that action he had "actually litigate[d]" the facts and issues relating to fraud. A number of courts have reached the same conclusion. *See, e.g.*, *Digital Sys. Eng'g v. Moreno*, 414 B.R. 485, 490-91 (Bankr. W.D. Wis. 2009); *Fed. Trade Comm'n v. Abeyta*, 387 B.R. 846, 853 (Bankr. D.N.M. 2008) ("There is no requirement that the defendant actually testify in his or her defense in the prior proceedings[ ] in order to satisfy the requirement that issues be 'actually litigated' in the prior proceeding. Thus even when a party invokes his Fifth Amendment privilege in the prior suit, the 'actually litigated' requirement for purposes of collateral estoppel may nevertheless be satisfied." (citations and some internal quotation marks omitted; alteration in original)). Brown actively participated in his opposition to the SEC's motion

for summary judgment and contested whether his assertion of the Fifth Amendment privilege in that case precluded a finding that there were no disputed facts. *Brown*, 579 F. Supp. 2d at 1234-35. Brown's invocation of the Fifth Amendment, without more, does not preclude a finding that he had a full and fair opportunity to litigate the issue of fraud in the SEC civil action. Accordingly, the bankruptcy court did not err in determining that collateral estoppel applied and thus did not err in denying Brown the opportunity to bring forth evidence contradicting those factual findings at summary judgment.

### III. HOMESTEAD EXEMPTION, PERSONAL PROPERTY EXEMPTION, AND CONSTRUCTIVE TRUST

Brown appeals the bankruptcy court's conclusion that the homestead exemption and personal property exemption did not apply. Brown also contends that the bankruptcy court erred by imposing a constructive trust on the equity in his homestead and on his 401(k) account because there was no unjust enrichment.

#### A. Homestead Exemption

Brown argues that the bankruptcy court erred by sustaining Manty's objections to the homestead exemption because Brown's conduct did not justify the bankruptcy court's refusal to recognize the homestead exemption. Brown also argues that the policies underlying Minnesota's homestead exemption militate against allowing creditors to reach Brown's homestead.

Minnesota law provides that a debtor's homestead is "exempt from seizure or sale under legal process." Minn. Stat. § 510.01. "A fundamental component of an individual

debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors." *Pineo v. Bogan*, 302 B.R. 524, 529 (Bankr. W.D. Pa. 2003) (internal quotation marks omitted). "The shield of exemption[, however,] may be penetrated in extreme circumstances where there is fraudulent conduct or a clear showing of bad faith." *Id.* A debtor may not "use the exemption laws as a safe harbor for ill-gotten gain," and exemptions should not "be applied in such a way as to make them instruments of fraud, an imposition on creditors, or a means to escape honest debts." *Cf. In re Hill*, 163 B.R. 598, 601 (Bankr. N.D. Fla. 1994) (construing an exemption under Florida law); *In re Ballard*, 115 B.R. 190, 191 (Bankr. D. Minn. 1990).

Brown does not challenge Manty's extensive tracing of Brawta funds to payments on Brown's homestead mortgages. (*See* Brown App. at 18-27, Docket No. 4.) The record demonstrates that Brown used Brawta investors' funds – approximately $347,000 – to make payments on Brown's homestead mortgages. (*See id.*) As the bankruptcy court noted:

> There's no genuine issue of material fact there because the tracing has been done and [Brown] has produced absolutely no evidence to defeat the tracing and, indeed, all of the bricks and probably even the actual conclusions for such a tracing have already been found by the District Court so they are really unassailable.

(*Id.* at 146.)

Given this Court's previous findings and the extensive evidence adduced by Manty showing Brown's misappropriation of funds to make payments on his homestead mortgage, there is no genuine fact dispute that Brown engaged in fraudulent conduct or bad faith. *See In re Ballard*, 115 B.R. at 191 ("[Exemptions] are appropriately

disallowed in providing a remedy to the estate[] for wrongful conduct[.]"). Although Minnesota vigorously protects a debtor's homestead, *see Ryan v. Colburn*, 241 N.W. 388, 389 (Minn. 1932), Brown's conduct removes those protections. Accordingly, the Court concludes that the bankruptcy court properly determined that Brown could not exempt equity in his homestead to the extent that the equity was attributable to Brown's misappropriation of Brawta investors' funds.[1]

### B. Personal Property Exemption: Brown's 401(k) Account

Brown also argues the bankruptcy court erred in concluding that only $13,103.60 was exempted from Brown's 401(k) account.

Under Minnesota law, individual retirement accounts are exempt property. Minn. Stat. § 550.37 subd. 24. An employee benefit like a 401(k) or IRA is not exempt, however, if the debtor used that asset as "a repository for ill-gotten monies." *In re Hill*, 163 B.R. at 602. The bankruptcy court did not clearly err in finding that $24,122.67 in Brown's 401(k) account is attributable to the misappropriation of Brawta funds and,

---

[1] Brown contends that he began making payments on his homestead "well before the alleged ill-gotten gains received between 2004 and 2006. Therefore, [Manty] could not legitimately claim, as [she] did, that '[b]ut for these payments, there would be no equity for Brown to exempt.'" (Appellant's Opening Br. at 14, Docket No. 3.) Brown's argument is not persuasive. The mere fact that Brown made payments on his homestead before the alleged fraud does not lead to the conclusion that the proceeds from the fraud, which were directed as payments on the homestead mortgage, could not establish the equity Brown seeks to exempt. Manty provided the bankruptcy court with ample evidence tracing the Brawta proceeds to payments on the homestead mortgages and Brown did not submit evidence challenging Manty's tracing as it relates to the homestead. The bankruptcy court's findings of fact on this point were not clearly erroneous.

therefore, the bankruptcy court did not err in concluding those funds in the 401(k) account are not exempt.[2]

Brown contends that his sworn affidavit of August 16, 2006, establishes that his 401(k) investments were made with funds "wholly unrelated to Brawta investors." (Appellant's Opening Br. at 11, Docket No. 3.) Brown argues that, as a consequence, "the independent financing of Brown's 401(k) precludes a finding that such was simply a 'repository for ill-gotten monies' that is 'entirely funded from proceeds of the [fraudulent acts].'" (*Id.*) Brown's affidavit was before the bankruptcy court prior to issuing its final order. The bankruptcy court found, however, that Manty accurately traced "$22,000 more or less in value in the 401(k)" to Brawta investors' funds. (Brown App. at 146, Docket No. 4.)

The Court concludes that Brown's affidavit was inadequate to create a genuine dispute of fact about whether Brown deposited Brawta investors' funds into his 401(k). Manty submitted to the bankruptcy court detailed exhibits demonstrating that between October 29, 2004, and December 30, 2004, $34,000 in checks drawn on Brawta's U.S. Bank account were deposited into the Jamerica account. (*Id.* at 28.) Manty also submitted as evidence Jamerica's bank account records showing that a total of $24,122.67 from that account was then deposited into Brown's 401(k) account. (*Id.* at

---

[2] Contrary to the implication in Brown's opening brief, the question before the Court is not whether Brown's 401(k) was funded **entirely** from proceeds from Brown's fraudulent acts. The bankruptcy court, in fact, determined that $13,103.60 was exempt from claims by creditors. The bankruptcy court concluded, however, that any money over that amount was not exempt because the undisputed evidence traced the remaining amounts to misappropriated funds from Brawta investors.

28-29.) By contrast, Brown's affidavit – which was originally filed in the SEC civil action in support of Brown's request to unfreeze assets – simply provides general documentation that Brown deposited checks from purportedly legitimate sources into his Jamerica account in February 2005 and March 2005, and soon thereafter transferred lesser amounts to his 401(k) account. (*Id.* at 95-96.)

Given the record before it, the bankruptcy court did not clearly err in finding that Brown could claim an exemption for his 401(k) account in the amount of only $13,103.60 and in finding that $24,122.67 in the 401(k) account constituted misappropriated funds from Brawta. Because Brown used his 401(k) as a repository for funds acquired from his fraudulent activities, the bankruptcy court did not err in limiting Brown's personal property exemption.

### C. Constructive Trust

"State law governs the resolution of property rights within a bankruptcy proceeding." *Chiu v. Wong*, 16 F.3d 306, 309 (8th Cir. 1994). Under Minnesota law, a court may impose a constructive trust in cases that involve fraud, taking improper advantage of a confidential or fiduciary relationship, or unjust enrichment. *Kunkel v. Ries*, 199 B.R. 940, 964 n.35 (Bankr. D. Minn. 1996). Thus, under Minnesota law, a bankruptcy court may impose a constructive trust on property to prevent a fraudulent debtor from being unjustly enriched. *See Chiu*, 16 F.3d at 309. "To establish a claim for unjust enrichment under Minnesota law, the plaintiff must show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity

and good conscience' should pay." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 553-54 (8th Cir.) (some internal quotation marks omitted), *cert. denied*, 129 S. Ct. 222 (2008). Put another way, "[i]n order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). "In addition to proof of wrongdoing, when a claimant seeks to impose a constructive trust upon property of a debtor in bankruptcy, the claimed beneficiary . . . must be able to sufficiently trace the original property to the proceeds." *Kunkel*, 199 B.R. at 964 n.35 (citing *Chiu*, 16 F.3d at 310). The bankruptcy court concluded:

> there is not only evidence of [fraud], there are [district court] findings . . . of illegal conduct contrary to the securities laws as specifically and expressly found by the District Court extraordinary recklessness at the very best on the part of [Brown] and the siphoning of the money over into property into the accretion of value in favor of [Brown] of two assets[, the homestead and 401(k) retirement account,] that he now would claim exempt and free and clear of the bankruptcy process. For this Court to allow him to keep those assets as exempt when, in fact, the value of monies to which the receiver in her charge from the District Court is entitled by allowing him to keep that when she can trace the value of the monies over into direct accretion of value in favor of [Brown] would be allowing unjust enrichment.

(Brown App. at 145, Docket No. 4.)

Brown argues that the bankruptcy court erred by imposing a constructive trust on the equity in his homestead and on a portion of his 401(k) account because there was no unjust enrichment. That is, Brown contends that because he began making payments on his homestead before the alleged fraud took place and because he invested in his 401(k) "wholly independent of the alleged wrongful acts," he did not receive those benefits as a

result of the alleged misconduct. The Court has already addressed those arguments above. Brown has not brought forth evidence demonstrating a genuine fact dispute that he knowingly received Brawta investors' funds and that, under the circumstances, it would be unjust for Brown to retain those assets. Further, because Manty submitted sufficient evidence tracing the Brawta investors' funds to the equity in the homestead and to a portion of the 401(k) savings, the bankruptcy court did not err by imposing a constructive trust on those assets for the benefit of Brawta investors.

## IV. DISCHARGE OF THE BRAWTA DEBT

Brown argues that the bankruptcy court erred by concluding that under 11 U.S.C. § 523(a)(4) and (a)(6) Brown's debt to Brawta was not dischargeable.

"Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy shall not discharge an individual debtor from certain kinds of obligations, including those for money obtained by 'actual fraud.'" *Grogan*, 498 U.S. at 280-81. Section 523(a)(4) bars discharge of a debtor's debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan*, 498 U.S. at 291. In reviewing dischargeability, "a bankruptcy court c[an] properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Id.* at 284.

Brown argues that the bankruptcy court should have denied Manty's motion for summary judgment because the court improperly relied on this Court's decision in the SEC civil action, which only "made factual findings regarding 'severe recklessness.' The court did not . . . have the opportunity to consider Brown's actions in light of the language contained in 11 U.S.C. § 523(a)(4)." (Appellant's Opening Br. at 13, Docket No. 3.) In short, Brown argues that Manty did not establish by a preponderance of the evidence that Brown incurred the Brawta debt through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Court disagrees.

"Whether a relationship is a fiduciary one within the meaning of section 523(a)(4) is a question of federal law. [T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Trader Oaks Ltd. P'ship v. Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997) (citation, internal quotation marks, and first alteration omitted). This Court previously found facts demonstrating that within the meaning of § 523(a)(4) Brown acted in a fiduciary capacity with respect to Brawta investors: Brown controlled Jamerica, Brown provided investment advisory services to Jamerica clients, and Brown encouraged those investors to invest in Brawta, which he created and controlled. *Brown*, 579 F. Supp. 2d at 1230-31. (*See also* Brown App. at 3, Docket No. 4.) As the bankruptcy court stated:

> [U]nder the circumstances . . . [Brown] had a fiduciary status as to his clientele for the transactions at issue here. Now, I don't know that that fiduciary status went any further than an utter obligation to forbear from self-dealing in the funds they placed [with] him for investment but it certainly extended that far. It was that kind of confidential relationship.

(Brown App. at 151, Docket No. 4.)

Further, Manty satisfied her burden under the preponderance of the evidence standard on the issue of fraud or defalcation. Although the Court concluded in the Order granting the SEC's motion for summary judgment that Brown acted with severe recklessness, the Court found facts that made clear that Brown engaged in fraudulent activity toward Brawta investors. Manty's affidavit and tracing provides further support for the bankruptcy court's finding that Brown used Brawta investors' funds for personal use. (*Id.* at 9-14.) Moreover, as noted by the bankruptcy court, under § 523(a)(4) "a finding of defalcation does not require evidence of intentional fraud or other intentional wrongdoing." *Cochrane*, 124 F.3d at 984 (internal quotation marks omitted).

> Defalcation is defined as the misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds. Under section 523(a)(4), defalcation includes the innocent default of a fiduciary who fails to account fully for money received. . . . An individual may be liable for defalcation without having the intent to defraud.

*Id.* (internal quotation marks omitted; alterations in original).

The Court's prior findings in granting the SEC's motion for summary judgment establish defalcation **and** intent to defraud. *See Brown*, 579 F. Supp. 2d at 1236 ("Scienter in this context means the intent to deceive, manipulate, or defraud, and can be proven with evidence of conduct which rises to the level of severe recklessness." (internal quotation marks and citation omitted)). The bankruptcy court stated:

> Judge Tunheim ultimately found that [Brown] extracted hundreds of thousands of dollars of funds from these investment programs as to which he was the manager and the person entrusted by his clientele to place those funds for outside investment in vehicles that ideally were going to generate

some kind of investment grade return to them, he didn't do so. He took a lot of the money and put it directly to his own use. Not even writing out a check to himself under the ostensible payment of compensation or fees to him but writing checks directly over to his own personal creditors.

(Brown App. at 141, Docket No. 4.)

Accordingly, the bankruptcy court did not err in concluding that the debt to Brawta was excepted from discharge under § 523(a)(4). Because the Court concludes that § 523(a)(4) excepts from discharge Brown's debt to Brawta, the Court need not address the parties' arguments relating to dischargeability under 11 U.S.C. § 523(a)(6).

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **AFFIRMS** the Order of Judgment of the Bankruptcy Court.

DATED: March 29, 2010  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge